1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11   GREGORY C. MONTOYA,

CASE NO. 09CV1279-MMA (JMA)

12                                   Plaintiff,

vs.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

13

14   REGENTS OF THE UNIVERSITY OF
CALIFORNIA, CALIFORNIA STATE
UNIVERSITY SYSTEM, and UNIVERSITY
OF CALIFORNIA SAN DIEGO,

[Doc. No. 16]

15

16                                   Defendants.

17          On June 12, 2009, Plaintiff Gregory Montoya filed the instant action against Defendant

18   Regents of the University of California alleging racial discrimination in violation of Title VII and 42

19   U.S.C. § 1981. (Doc. No. 1.) On May 14, 2010, Defendant filed a motion for summary judgment.

20   (Doc. No. 16.) On June 4, 2010, Plaintiff filed an opposition to the motion (Doc. No. 21), and on June

21   21, 2010, Defendant filed a reply (Doc. No. 25). On June 25, 2010, in advance of the Court's hearing

22   on the motion, the Court issued a notice and order providing the parties with the Court's tentative

23   ruling. (Doc. No. 26.) In the notice, the Court stated that its tentative ruling was to grant Defendant's

24   motion for summary judgment. On June 28, 2010, the Court held a hearing on the motion. Attorney

25   Doc Anthony Anderson, III appeared on behalf of the Plaintiff and attorney John S. Adler appeared

26   on behalf of the Defendant. At the end of the hearing, the Court took the matter under submission.

27   Having considered the oral and written arguments of the parties, and for the reasons stated herein, the

28   Court confirms its tentative ruling and **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND[1]

The following facts are not reasonably in dispute. Plaintiff considers himself to be Hispanic and/or Latino. (*Pl.'s Depo.* at 157:24–158:1; *Pl.'s Decl.* at ¶ 3.)[2] On July 15, 2002, Plaintiff was hired by the University of California, San Diego ("UCSD" or "the University") to work as a Senior Building Maintenance Worker in UCSD's University Centers' Maintenance Department. (*Def.'s Notice of Lodgment ("NOL")*, Ex. 1.) At all times during Plaintiff's employment in the University Centers' Maintenance Department, Plaintiff's work schedule was 2:30 p.m. to 10:30 p.m., Sunday through Thursday, (*Pl.'s Depo.* at 22:19–23:3), and his main tasks were plumbing and electrical (*Arcia Decl.* at ¶ 5; *Pl.'s Depo.* at 60:7–15; 63:2–4; 164:8–10; *Maringer Depo.* at 15:20–16:7). In November 2005, Plaintiff voluntarily left his position at UCSD to accept a position at San Diego State University ("SDSU"). (*Id.* at 47:24-48:2.) Plaintiff's move to SDSU was accompanied by an increase in pay. (*Id.* at 48:3–5.)

In the Spring of 2006, Plaintiff contacted Joe Arcia, his former supervisor at UCSD, and expressed an interest in returning to the University Centers' Maintenance Department. (*Pl.'s Depo.* at 50:10–13; *Arcia Decl.* at ¶ 4.) At all times during Plaintiff's employment in the University Centers' Maintenance Department, Arcia was either the Assistant Superintendent or the Superintendent of the Department. (*Arcia Decl.* at ¶ 3.) Arcia's race and/or national origin is Latino/Hispanic. (*Arcia Decl.* at ¶ 2.) Arcia told Plaintiff that his old position as a Senior Building Maintenance Worker was still available, with a listed schedule of Sunday through Thursday. (*Arcia Decl.* at ¶ 4.) Plaintiff applied for and was ultimately hired by Arcia to fill the position. (*Id.*; *Pl.'s Depo.* at 50:14–51:7.) To return to his old position at UCSD, Plaintiff took a pay cut of approximately $400.00 a month, and was forced to decline SDSU's offer of a $200 a month increase in pay if he agreed to stay. (*Pl.'s Depo.* at

---

[1]Both parties offer an inordinate number of objections to each other's evidence. To avoid an unnecessary and lengthy discussion of objections, the Court advises the parties that it has considered the objections. Many of the objections are well taken, and to the extent it has not referred to some particular piece of evidence or not otherwise addressed that evidence herein, the Court does so because it has sustained the objection. However, to the extent that the Court discusses and relies on evidence in this Order, it finds that the evidence is admissible and overrules any objection to it.

[2]Plaintiff frequently refers to himself interchangeably as Latino and/or Hispanic. (*See, e.g.*, *Pl.'s Decl.* at ¶ 3.) Because Plaintiff has failed to distinguish between the two, both terms appear throughout this Order.

48:16–20; 51:8–14; 53:23–54:16.) On April 24, 2006, Plaintiff returned to his position at UCSD with a Sunday through Thursday, 2 p.m. to 10:30 p.m. work schedule. (*Def.'s NOL*, Ex. 4; *Pl.'s Depo.* at 51:3–7.) Plaintiff testified during his deposition that this schedule was acceptable. (*Pl.'s Depo.* at 23:1–3.)

In the Fall of 2006, Mike Prouty, a Caucasian, learned about an open Senior Building Maintenance Worker position in the University Centers' Maintenance Department. (*Prouty Depo.* at 14:20–22.) At the time, Prouty was working as a Development Tech III in UCSD's Chemistry Department. (*Prouty Depo.* at 10:4–11:20; *Stinson Decl.* at ¶ 5.) It is undisputed that the posting originally advertised the work schedule for the Senior Building Maintenance Worker position as Monday through Friday. (*Id.* at 16:1–20; *Arcia Decl.* at ¶ 6.) After Prouty applied for the position but before his interview with Arcia, Arcia changed the position's work schedule to Tuesday through Saturday. (*Prouty Depo.* at 16:5–20; *Arcia Decl.* at ¶ 6.) Nevertheless, after interviewing Prouty, Arcia hired Prouty on a Monday through Friday schedule. (*Arcia Decl.* at ¶ 6; *Prouty Depo.* at 17:9–18:16; *Def.'s NOL*, Ex. 9.) On September 1, 2006, Prouty began working as a Senior Building Maintenance Worker. (*Def.'s NOL*, Ex. 9.) Although Prouty incurred a small reduction in pay as a result of the transfer, it is undisputed that Prouty entered the position at the top of the pay scale for Senior Building Maintenance Workers and made more than Plaintiff. (*Stinson Decl.* at ¶ 5; *Pl.'s Depo.* at 166:18–167:167:5; *Prouty Depo.* 19:24–20:10.) A few months later, Arcia hired Duarte Da Rosa, a Caucasian, as a Senior Building Maintenance Worker on a Tuesday through Saturday schedule. (*Arcia Decl.* at ¶ 6.)

Shortly after Prouty was hired, the Maintenance Department requested and was granted an equity pay increase for Plaintiff. (*Stinson Decl.* at ¶ 5.) Effective November 1, 2006, Plaintiff's monthly salary was increased by approximately $200.00 a month. (*Pl.'s Depo.* at 100:1–4.) Plaintiff's pay rate was sufficient under the union's collective bargaining agreement because it placed Plaintiff's pay rate within five percent of Prouty's pay rate. (*Id.* at 95:17–22.) Prouty, however, still earned more than Plaintiff. (*Id.*)

At some point in the Fall of 2007, Plaintiff applied for a Maintenance Mechanic position in UCSD's Facilities Maintenance Department. On October 16, 2007, the day after UCSD's Facilities

Management Department extended an oral offer to Plaintiff, Plaintiff issued Arcia an ultimatum that if certain demands were not met, Plaintiff would resign his position as Senior Building Maintenance Worker. (*Pl.'s Depo.* at 67:20–68:4; *Def.'s NOL* at Ex. 3.) When Arcia advised Plaintiff that he could not meet all of the demands, Plaintiff resigned. (*Pl.'s Depo.* at 68:7–71:11.)

Plaintiff began working in the Facilities Management Department on November 1, 2007, receiving a "significant increase in pay." (*Pl.'s Depo.* at 72:23–73:7; *Def.'s NOL* at Ex. 4.) Plaintiff's schedule requires him to work Saturdays and Sundays. (*Pl.'s Depo.* at 73:8–18.) Despite the fact that Plaintiff is now employed as a Maintenance Mechanic at a higher rate of pay, Plaintiff has tried to transfer back to the Maintenance Department, where he would again be under Arcia's supervision. (*Pl.'s Depo.* at 75:5–7.)

On March 7, 2008, Plaintiff filed a Charge of Discrimination with the California Department of Fair Employment and Housing ("FEHA"). In the charge, Plaintiff asserts that he was discriminated against because of his national origin when he was (1) paid less than his non-Latino co-worker, (2) was denied opportunities to work overtime when his non-Latino co-worker was permitted to work overtime, (3) when his non-Latino co-worker was given weekends off when Plaintiff was not, and (4) when Plaintiff was "forced to resign [his] position on October 16, 2007." (*Compl.*, Ex. A.) On June 12, 2009, Plaintiff filed the instant action alleging racial discrimination in violation of Title VII and 42 U.S.C. § 1981.[3]

## LEGAL STANDARD

A moving party is entitled to summary judgment only if the moving party can demonstrate that (1) "there is no genuine issue as to any material fact," and (2) he is "entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is one that raises a question that a trier of fact must answer to determine the rights of the parties under the substantive law that applies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the

---

[3]In the opposition to the motion, Plaintiff asserts that he also has a hostile work environment claim. (*Pl.'s Opp.* at 11:6–12:21.) Defendant asserts in its reply that Plaintiff did not plead harassment in his complaint or exhaust his administrative remedies on such a claim. (*Def.'s Reply* at 7:18–8:3.) The Court shall address Plaintiff's asserted hostile work environment claim below.

nonmoving party." *Id.* at 248. The initial burden is on the moving party to show that both prongs are satisfied. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)). The inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## ANALYSIS[4]

Plaintiff alleges racial discrimination under both 42 U.S.C. § 1981 and Title VII of the Civil

---

[4]The Court notes that Plaintiff's opposition and separate statement of material facts offer little guidance to the Court in assessing whether summary judgment is appropriate. The district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988). *See also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that the Court is under no obligation to "examine the entire file for evidence establishing a genuine issue of fact"); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) ("A party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation."). While the Court has not combed through the record to determine whether a triable issue of fact exists, the Court has endeavored to review each of the citations provided by Plaintiff in his separate statement of material facts to determine if any yield a triable issue of fact.

Rights Act. The Court shall address each allegation in turn.

A.      42 U.S.C. § 1981 - Unlawful Discrimination

        Plaintiff first asserts that Defendant's conduct constituted unlawful discrimination in violation of 42 U.S.C. § 1981. Defendant seeks summary judgment on this claim in part because the claim is barred by the Eleventh Amendment. (*Def.'s Mot. for Summ. J.* at 8:10–19 (citing *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)).) In Plaintiff's response to Defendant's Separate Statement of Undisputed Facts, Plaintiff concedes that this claim should be dismissed because UCSD is entitled to immunity under the Eleventh Amendment. (*Pl.'s Separate Statement of Undisputed Facts* at ¶ 1.) Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's Section 1981 claim.

B.      Title VII - Racial Discrimination

        a.      *Exhaustion of Administrative Remedies*

        Plaintiff filed a Charge of Discrimination with the California Department of Fair Employment and Housing on March 7, 2008. (*Def.'s NOL*, Ex. 5; *Compl.*, Ex. A.) In his Charge, Plaintiff identified four adverse actions: (1) since January 1, 2007, Plaintiff was paid less than his non-Latino co-worker; (2) Plaintiff was denied an opportunity to work overtime on three days in August 2007; (3) since September 1, 2007, Plaintiff's non-Latino co-worker received preferential treatment when he was given weekends off, and (4) Plaintiff felt he was forced to resign from his position on October 16, 2007. (*Id.*) Plaintiff also states in the Charge that the discrimination took place between January 1, 2007 and October 16, 2007. However, in his Complaint, Plaintiff identified the following 14 actions that he contends were the result of discrimination: (1) Plaintiff was denied a promotion or reclassification to the Maintenance Mechanic position when similarly situated employees of a different race were not; (2) Plaintiff was paid less than other similarly situated employees of a different race; (3) Plaintiff was denied educational opportunities; (4) Plaintiff was required to complete job assignments started by others; (5) Plaintiff was required to purchase his own uniform items at his own expense when other similarly situated employees of a different race were not; (6) Plaintiff was denied requests for time off when other similarly situated employees of a different race were not; (7) Plaintiff was publicly berated and treated in a non-professional manner by supervisory staff; (8) Plaintiff's

comings and goings were "extremely scrutinized and criticized" by supervisory staff; (9) since January 1, 2007, Plaintiff had been earning less than similarly situated employees of a different race; (10) Plaintiff was denied overtime on three occasions in August 2007; (11) since September 1, 2007, Plaintiff's request for weekends off were consistently denied; (12) Plaintiff was required to do the work of others; (13) Plaintiff was publicly berated and belittled; and (14) Plaintiff was not allowed time off for UCSD functions. (*Compl.* at ¶ 18.)

The Court notes that the allegations set forth in the complaint are, for the most part, generalized and lack any supporting facts. However, the Court has reviewed the evidence and determined that plaintiff's allegations in his complaint are based on the following identifiable actions: (1) Plaintiff was denied a Maintenance Mechanic position during the entirety of his employment in the Maintenance Department (*Pl's Depo.* at 46:4–17); (2) since January 1, 2007, Plaintiff was paid less than Senior Building Maintenance Worker Michael Prouty (*Pl.'s Depo.* at 95:17–96:6) and Maintenance Mechanic Michael Sutherland (*Pl.'s Depo.* at 169:5–16); (3) in April 2006, Arcia decided not to allow Plaintiff to attend an electrical certification course (*Pl.'s Depo.* at 94:24–95:2; 109:17–110:3; 113:24–115:24); (4) in January 2004, Plaintiff was not reimbursed for a second work jacket (*Pl.'s Depo.* at 67:7–8; 94:14–95:2); (5) in March 2007, Arcia denied Plaintiff's request for two consecutive Sundays off (*Pl.'s Depo.* at 95:2; 145:6–146:21; 147:5–6); (6) Plaintiff was denied overtime opportunities on one occasion in May 2007 (*Pl.'s Depo.* at 158:17–159:4) and three occasions in August 2007 (*Pl.'s Depo.* at 176:11–22); and (7) since September 2007, Plaintiff was repeatedly denied weekends off (*Pl.'s Depo.* at 34:12–41:25).[5]

---

[5]A review of the record demonstrates that the actions described in subparagraphs 4, 7, 8, 12, 13, and 14 of paragraph 18 in the Complaint are nonspecific and unsupported in the record. Other than his own self-serving declaration, Plaintiff fails to identify specific instances or offer any other evidence upon which he bases these particular allegations. For example, Plaintiff states that he was asked to complete the tasks of other Senior Building Maintenance Workers (*Pl.'s Decl.* at 5:14–18), but fails to identify when he was asked to do so, by whom, for whom, or any other facts to support his statement. Such a statement, without evidentiary support, lacks foundation, is conclusory, and ultimately irrelevant. Moreover, a plaintiff's uncorroborated self-serving declaration is insufficient to create a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

In addition, these particular actions are not discrete discriminatory acts that are independently actionable. Thus, the Court infers that Plaintiff has identified them as support for his hostile work environment claim. However, for the reasons noted below, Plaintiff's hostile work environment claim is barred because he failed to exhaust his administrative remedies.

Defendant first contends that Plaintiff's claim is barred and/or limited by his failure to exhaust his administrative remedies. A California employee who claims violations of Title VII must file his charge with the EEOC, or the California Department of Fair Employment and Housing, within 300 days after the discriminatory act occurred. 42 U.S.C. § 2000e-(5)(e)(1); *See also Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991). The administrative requirement to timely file a charge "serves as a judicial statute of limitations" and substantial compliance with the presentment requirement is a jurisdiction prerequisite. *Sommatino v. United States*, 255 F.3d 704, 707–09 (9th Cir. 2001); *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990). In other words, if a claim is not timely raised with the EEOC or the California Department of Fair Employment and Housing, the Court will not consider it except in the limited circumstances of waiver, estoppel, or equitable tolling. *Sommatino*, *supra*, 255 F.3d at 708.

Based on the date that Plaintiff filed his charge of discrimination, any conduct that occurred prior to May 10, 2007 falls outside of the statute of limitations and thus cannot be considered in assessing Plaintiff's claim of racial discrimination. In his opposition, Plaintiff cites a number of cases that describe various exceptions to the exhaustion requirement but offers no analysis on why the exceptions should be applied in this case. For example, Plaintiff refers to a case that stands for the proposition that the filing requirement is subject to equitable tolling, but offers no further analysis. While a court can equitably toll the limitations period, the plaintiff bears the burden of establishing (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing. *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007). When the Court asked Plaintiff about the possibility of equitable tolling or waiver at the hearing, Plaintiff abandoned the argument entirely. (*Hr'g Tr.* at 32:21–23.)

Instead, Plaintiff now urges the Court that he has exhausted his administrative remedies on the 14 adverse actions he identifies in the Complaint on grounds that those actions were reasonably related to the charges set forth in his Charge of Discrimination. (*Hr'g Tr.* at 32:16-35:4.) In his opposition, Plaintiff cites the Ninth Circuit's decision in *Sosa v. Hiraoka,* 920 F.2d 1451 (9th Cir. 1990) as support for his position. (*Pl.'s Opp.* at 13:4–13.) In *Sosa*, the Ninth Circuit held that claims that occur prior to the 300-day period remain actionable if plaintiff is able to demonstrate that they are part of

a "continuing violation" of the plaintiff's Title VII rights. Specifically, the Court explained, "Under the continuing violation doctrine, 'a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.'" *Id.* at 1455 (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.), *cert. denied*, 459 U.S. 971, 74 L. Ed. 2d 283, 103 S. Ct. 302 (1982).

In *National Railroad Passenger Corp. v. Morgan*, however, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002). The Court explained that, "the existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* As the Ninth Circuit later explained in *Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002), "[t]he Supreme Court's decision in *Morgan* invalidated our previous application of the continuing violation doctrine to discrete acts of discrimination and retaliation." *Id.* at 1106. "When . . . a plaintiff pursues several disparate treatment claims, based on discrete discriminatory acts, the limitations period will begin to run for each individual claim from the date on which the underlying act occurs." *Id.* at 1107.

Here, Plaintiff identifies four discrete acts in his charge of discrimination, but numerous others in his Complaint. Many of the acts alleged in the Complaint occurred before May 10, 2007 and were not identified in Plaintiff's charge of discrimination. Based on the holding in *Morgan*, any discrete act that occurred prior to May 10, 2007 is untimely and therefore not actionable. Accordingly, the Court finds Plaintiff's allegations regarding the extra work jacket (January 2004), the electrical certification course (April 2006), and the denial of two consecutive Sundays off (March 2007) to be untimely and thus no longer actionable.

Although the Court was unable to find evidence of particular dates of Plaintiff's reclassification request, Defendant does not dispute that Plaintiff requested reclassification into the Maintenance Mechanic position and his requests were denied. (*Arcia Decl.* at ¶ 3.) Moreover, it does appear from the record that immediately prior to his resignation, Plaintiff again sought reclassification

into the position. (*Def.'s NOL*, Ex. 3.) Finally, at the hearing Plaintiff's counsel stated that the resignation constituted an adverse action because Plaintiff was forced to leave to obtain the Maintenance Mechanic position in another department as a result of Arcia's denial of reclassification. (*Hr'g Tr.* at 41:17–42:11.) Based on the foregoing, the Court finds that this allegation could have reasonably grown out of an investigation into Plaintiff's charge. Accordingly, because this action occurred within the 300-day period and would have reasonably grown out of the investigation, the Court finds this particular adverse action exhausted.

Finally, the Court notes that Plaintiff asserts in his complaint, but not his Charge, that he was not permitted to work overtime in May 2007. Although Plaintiff did not identify this occasion in his charge of discrimination, it is an allegation that could have reasonably grown out of an investigation into Plaintiff's charge because Plaintiff asserted that he was denied overtime and the May 2007 denial occurred within the 300-day time period. Thus, the Court finds the May 2007 action exhausted as well.

Therefore, based on the foregoing, the Court finds that Plaintiff has exhausted his administrative remedies on the following discrete acts: (1) since January 1, 2007, Plaintiff was paid less than Senior Building Maintenance Worker Michael Prouty (*Pl.'s Depo.* at 95:17–96:6) and Maintenance Mechanic Michael Sutherland (*Pl.'s Depo.* at 169:5–16); (2) Plaintiff was denied an opportunity to work overtime on one day in May 2007 (*Pl.'s Depo.* at 158:17–159:4) and three days in August 2007 (*Pl.'s Depo.* at 176:11–22); (3) since September 2007, Plaintiff was repeatedly denied weekends off (*Pl.'s Depo.* at 34:12–41:25); and (4) Plaintiff was denied a Maintenance Mechanic position during the entirety of his employment in the Maintenance Department (*Pl's Depo.* at 46:4–17).

     *b.*    *Hostile Work Environment*

In his opposition to Defendant's motion for summary judgment, Plaintiff asserts a claim for hostile work environment in addition to his disparate treatment claim. (*Pl.'s Opp.* at 11:6–12:21.) In its reply, Defendant contends that there is no hostile work environment claim at issue because Plaintiff did not allege one in his Complaint or his Charge of Discrimination. (*Def.'s Reply* at 7:18–8:3.) Upon review of the Complaint, there is one reference to Defendant's conduct as "harassing," but there is no clear claim of harassment. However, even assuming that this single reference to "harassing" conduct

was sufficient to put Defendant on notice of a hostile work environment claim, Plaintiff's Charge of Discrimination did not allege a harassment claim. There is nothing in the charge that alleges harassing behavior or harassing remarks; indeed, the word harassment does not even appear in the Charge.

After determining that discrete acts are only actionable if a timely grievance is filed, the Court in *Morgan* went on to clarify how a plaintiff exhausts a hostile work environment claim. Specifically, the Court noted: "given . . . that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Morgan*, *supra*, 536 U.S. at 118. The Ninth Circuit further elucidated the issue while addressing whether a plaintiff had exhausted her administrative remedies on a sexual harassment claim in *Porter v. Cal. Dep't of Corrections*, 419 F.3d 885, 893 (9th Cir. 2005). The Ninth Circuit held that in order to exhaust a hostile work environment claim, a plaintiff must allege a timely non-discrete act. If the plaintiff adequately alleges a timely non-discrete act, then he may be able to bring in other untimely non-discrete acts to establish a hostile work environment claim if those acts were 'sufficiently severe or pervasive,' and the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Porter*, *supra*, 419 F.3d at 893. The Court explained: "[W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment. If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts." *Porter, supra*, 419 F.3d at 893. The Ninth Circuit went on to explain, however, that "discrete acts still may be considered for purposes of placing non-discrete acts in the proper context." *Id.* at 893 n.4. Thus, the only way to state a hostile environment claim under current Ninth Circuit law is to allege a *timely* non-discrete act. Here, Plaintiff failed to allege a timely non-discrete act in his charge of discrimination. This fact combined with the fact that Plaintiff made no allegation regarding harassment or hostile work environment compels the conclusion that Plaintiff failed to exhaust his administrative remedies on his

asserted hostile work environment claim.[6]

      *c.    Merits of Plaintiff's Racial Discrimination Claim*

          *1.    Legal Standard*

On a motion for summary judgment, disparate treatment claims are analyzed in terms of an allocation of burdens first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff has the initial burden to establish a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). In order to establish a prima facie case of national origin discrimination on a disparate treatment theory, Plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position; (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably than he was. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Under this scheme, "establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 253–54.

Once this presumption is created, the burden shifts to the employer to produce evidence that "the plaintiff was rejected, or someone else was preferred for a legitimate, nondiscriminatory reason." *Id.* at 254. If the employer presents evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff then has the burden to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

---

      [6]Even if Plaintiff had exhausted his administrative remedies, there is no evidence to support a hostile work environment claim. Plaintiff bears the burden of establishing that a triable issue of fact exists as to whether (1) he was "subjected to verbal or physical conduct" because of his race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment." *Manatt v. Bank of Am.*, 339 F.3d 792, 298 (9th Cir. 2003). "To determine if an environment is sufficiently hostile or abusive to violate Title VII, we look at 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

      As already noted, the allegations that appear to go to Plaintiff's hostile work environment claim are conclusory and do not appear to be grounded in any evidentiary support. Plaintiff fails to provide the Court with evidence of specific instances where he was subjected to racial epithets, demeaning language, or the other hallmarks of a hostile work environment. And while Plaintiff claims that he was subjected to unfair treatment, Plaintiff's assertion that it was because of racial animus is unsupported by the record and does not appear to be grounded on anything other than Plaintiff's unfounded speculation. Thus, even if the Court found the claim to be exhausted, there is not a scintilla of evidence capable of creating a triable issue of fact on the claim.

discrimination." *Id.* at 253. Plaintiff cannot carry his burden "simply by restating the prima facie case and expressing an intent to challenge the credibility of the employer's witnesses on cross-examination. [H]e must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." *Lindahl v. Air France*, 930 F.2d 1434, 1437–38 (9th Cir. 1991).

### 2. *Prima Facie Case*

Rather than addressing whether Plaintiff has met his burden of establishing a prima facie case on each of the exhausted adverse actions, Defendant for the most part skips straight to its legitimate, non-discriminatory reasons, which it then contends Plaintiff fails to rebut. The Ninth Circuit has described the Plaintiff's burden of establishing a prima facie case as minimal, stating that the degree of proof necessary "does not even need to rise to the level of a preponderance of the evidence." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). The Court, however, is obligated to determine whether Plaintiff has met even this minimal standard before determining whether Defendant has met its burden of establishing legitimate, non-discriminatory reasons for its actions.

It is undisputed that Plaintiff is a member of a protected class; he is Latino. (*Pl.'s Depo.* at 157:24–158:1.) With many of the asserted discriminatory acts, however, Plaintiff fails to demonstrate that the acts constituted adverse actions or that similarly situated individuals outside Plaintiff's protected class were treated more favorably than he was.

First, Plaintiff complains that he was not promoted or reclassified to the Maintenance Mechanic position. (*Pl.'s Depo.* at 46:4-17; *Compl.* at ¶ 18(1).) In the context of a claim that the employer failed to promote an employee, the employee must demonstrate *inter alia* that he "applied for and was qualified for a job for which *the employer was seeking applications*." *McDonnell Douglas*, *supra*, 411 U.S. at 802. It is undisputed that there was never a Maintenance Mechanic position open or available while Plaintiff worked in the Maintenance Department. (*Arcia Decl.*, at ¶ 3.) Moreover, it is undisputed that no one was promoted or reclassified to a Maintenance Mechanic

1   position during Plaintiff's employ. (*Id.*)[7] Plaintiff relies on the fact that Sutherland, who was

2   Caucasian, had been reclassified into the Maintenance Mechanic position. (*Pl.'s Depo.* at 46:4-17.)

3   However, it is undisputed that Sutherland, as well as the only other Maintenance Mechanic in the

4   department, Danny Mesa, were reclassified as Maintenance Mechanics prior to Plaintiff's employment

5   in the Department. (*Stinson Decl.* at ¶ 6.) Plaintiff has presented no evidence that there was any

6   available maintenance mechanic position during the entirety of his employment in the department, nor

7   has Plaintiff addressed why Sutherland's promotion, which occurred prior to Plaintiff working in the

8   Department, bears any relevance to his claim. Finally, Plaintiff has not demonstrated in any respect

9   that he was qualified for a Maintenance Mechanic position.[8] Based on the lack of evidence on this

10  prong of the prima facie case, Plaintiff has failed to meet his initial burden. The Court, accordingly,

11  **GRANTS** Defendant's motion for summary judgment on the failure to promote claim.

12

13         Second, Plaintiff takes issue with the fact that he was paid less than Senior Building

14  Maintenance Worker Michael Prouty (*Pl.'s Depo.* at 95:17–96:6) and Maintenance Mechanic Michael

15  Sutherland (*Pl.'s Depo.* at 169:5-16). There is no evidence, however, that Plaintiff was similarly

16  situated to Sutherland. It is undisputed that Sutherland was in a completely different and higher paying

17  position than Plaintiff. (*Pl.'s Depo.* at 47:8–10.) There are various places within the record where

18  Plaintiff asserts that he was performing tasks of a Maintenance Mechanic, however, other than

19  Plaintiff's conclusory statements and self-serving declaration, Plaintiff offers no evidence to support

20  this claim. (*See, e.g.*, *Pl.'s Depo.* at 46:7–17; 169:14–23; *Pl.'s Decl.* at 3:8–15; 5:6–18.) For example,

21  _____

22         [7]Plaintiff attempts to create a triable issue of fact that a similarly situated Caucasian Senior
    Building Maintenance Worker was reclassified as a Maintenance Mechanic by identifying Daniel

23  Adams. (*Pl.'s Decl.* at ¶ 18.) Adams, however, worked in the International Center Department, which
    is separate and distinct from the University Centers Department, and has a different staff, different

24  department head, and different payroll. (*Stinson Supp. Decl.* at ¶ 3.) Thus, any evidence related to
    Adams reclassification is irrelevant. Without this evidence, Plaintiff has failed to demonstrate that this

25  fact is in dispute. Because Plaintiff has failed to establish that he was similarly situated to Plaintiff,
    the Court declines to consider any facts relating to Adams in assessing this adverse action.

26         [8]For example, Plaintiff fails to provide the Court with a job description for the maintenance

27  mechanic position. Moreover, Plaintiff fails to demonstrate in any respect that he had the requisite
    skills, background, and education for the position. Plaintiff's assertion that he was qualified for the

28  position is insufficient to create a triable issue of fact. *See Schuler v. Chronicle Broadcasting Co.*, 793
    F.2d 1010, 1011 (9th Cir. 1986) (holding that an employee's subjective view of her own skills and
    qualifications are subjective personal judgments incapable of raising a genuine issue of material fact).

1    Plaintiff fails to demonstrate to the Court what particular tasks he was performing that would normally

2    be performed by a Maintenance Mechanic, or that there was significant overlap between the two

3    positions. While there is some evidence that Plaintiff's complaint was common among the other

4    Senior Building Maintenance Workers, the fact remains that Plaintiff was a Senior Building

5    Maintenance Worker, not a Maintenance Mechanic, he had less seniority than Sutherland, and was,

6    for all intents and purposes, not similarly situated to Sutherland. Thus, to the extent Plaintiff's claim

7    of racial discrimination is predicated on his claim that he was paid less than Sutherland, Plaintiff has

8    failed to establish a prima facie case on that particular action. Thus, the Court **GRANTS** Defendant's

9    motion for summary judgment on that claim.

10        Third, Plaintiff complains that he was denied the opportunity to work overtime on four

11    occasions over five years of employment. (*Pl.'s Depo.* at 158:17–159:4; 176:11–22.) Defendant makes

12    the argument that, "Passing up an employee for overtime on four occasions over the course of almost

13    five years would not have a **material** effect on his compensation or on the terms and conditions of his

14    employment, and is thus not actionable." (*Def.'s Mot. for Summ. J.* at 18:19–27 (emphasis in

15    original).) While the Court finds Defendant's argument persuasive, the Court notes that the Ninth

16    Circuit broadly defines "adverse employment action" to include "a wide array of disadvantageous

17    changes in the workplace." *Ray v. Henderson*, 217 F.3d 1234, 1240–41 (9th Cir. 2000). In light of this

18    broad definition and the fact that the denial of overtime prevented the Plaintiff from earning more

19    money, the Court shall consider this to be an adverse action.

20        Fourth, Plaintiff asserts that since September 2007, he was repeatedly denied weekends off,

21    while Prouty was permitted to take weekends off. (*Pl.'s Depo.* at 46:4–17.) Defendant asserts that this

22    does not constitute an adverse action because Plaintiff's work schedule required him to work on

23    weekends, while Prouty's did not. (*Def.'s Mot. to Dismiss* at 21:25–22:2.) Plaintiff does not dispute

24    that he was hired on a Sunday through Thursday schedule. (*Def.'s NOL*, Ex. 2; *Pl.'s Depo.* at

25    50:19–51:23.) Nor does Plaintiff offer any evidence to dispute the fact that Prouty was hired on a

26    Monday through Friday schedule. (*Def.'s NOL*, Ex. 9.) Because Plaintiff's schedule required him to

27    work weekends, Defendant contends that Plaintiff's request is more properly characterized as a request

28    for a different schedule and that the denial of such a request cannot constitute an adverse action. While

the Court is inclined to agree with Defendant, Plaintiff contends that Prouty chose his own schedule and Defendant refused to allow Plaintiff to do the same. (*Pl.'s Depo.* at 23:4–23:25.) In light of this assertion and the existence of some evidentiary support that Prouty was hired on a Monday through Friday work schedule despite the fact that Defendant advertised the position with a Tuesday through Saturday schedule, the Court finds that Plaintiff has established a prima facie case.

Finally, the Court notes that the record is replete with evidence that a Caucasian Senior Building Maintenance Worker, Duarte Da Rosa, who Plaintiff has not disputed was similarly situated to Plaintiff, earned less than Plaintiff and, like Plaintiff, worked weekends. While this evidence could potentially be a basis for determining that Plaintiff has not established that similarly situated individuals outside Plaintiff's protected class were treated more favorably than he was, the Court finds it more appropriate to address this evidence in the context of Defendant's legitimate, non-discriminatory reasons. *See Snead v. Metropolitan Pro. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (finding evidence that a similarly situated employee was treated in a similar manner could be used to reinforce the defendant's proffered legitimate, non-discriminatory reason).

### 3.   Legitimate Non-Discriminatory Reasons & Evidence of Pretext

Once a plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Once the defendant satisfies its burden, the burden then shifts back to the plaintiff to demonstrate that the reason articulated is pretextual. "A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1170 (9th Cir. 2007) (quoting *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000)). "All of the evidence [as to pretext] - whether direct or indirect - is to be considered cumulatively." *Id.* (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)). Moreover, "[a] plaintiff may discredit an employer's proffered reason by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find that reason unworthy of credence." *Bowden v. Potter*, 308 F. Supp. 2d

1108, 1119 (N.D. Cal. 2004). "In addition a plaintiff may demonstrate pretext by showing that the employer treated similarly situated employees outside the plaintiff's protected class more favorably." *Id.* at 1119–20.

           a.     Allegation that Plaintiff was paid less than his non-Latino co-worker

Plaintiff alleges that he was paid less than Prouty, even though they were similarly situated. (*Compl.* at ¶¶ 18(3), 18(9); *Pl.'s Depo.* at 95:17–96:6.) Defendant contends that the discrepancy between Plaintiff and Prouty's pay was the result of Prouty's transfer to a lesser-paying position and the University's desire to reduce the financial impact on Prouty that resulted from the transfer as much as possible. (*Def.'s Mot. for Summ. J.* at 11:26–14:4.)

Before being hired as a Senior Building Maintenance Worker in the Maintenance Department, Prouty was a Development Tech III in the Chemistry Department. (*Stinson Decl.* at ¶ 5; *Prouty Depo.* at 10:4–11:20.) In that position, Prouty already earned more than the top of the pay scale for Senior Building Maintenance Workers. (*Stinson Decl.* at ¶ 5.) Defendant presented evidence that when a University employee transfers between positions in different departments, the University attempts to allow the transfer to occur without a reduction in pay when possible. (*Stinson Decl.* at ¶ 4; *Prouty Depo.* at 19:15–23.) It is undisputed that Prouty took a pay cut when he transferred to the Maintenance Department but that he still earned more than Plaintiff because of the University's policy. (*Stinson Decl.* at ¶5; *Pl's Depo.* at 167:10–12.) It is also undisputed that Plaintiff was promptly given a pay increase so that his pay rate would be comparable to Prouty's pay rate. (*Stinson Decl.* at ¶ 5; *Pl.'s Depo.* at 95:17–22, 100:1–4.) Furthermore, Plaintiff does not dispute the fact that Arcia, the alleged discriminatory supervisor, played no role in determining Prouty's rate of pay. (*Stinson Decl.* at ¶ 5.) Finally, and perhaps most importantly, Plaintiff does not dispute that Da Rosa, a Caucasian Senior Building Maintenance Worker, also earned less than Prouty. Defendant has offered a legitimate, non-discriminatory reason for the discrepancy in pay, as well as evidence that rebuts any inference of discrimination. Yet Plaintiff offers no evidence to suggest that Defendant's reason is pretext. Upon review of the evidence, it appears that Plaintiff's assertion that the pay disparity was based on race is pure speculation unsupported by any evidence.

           b.     Allegation that Plaintiff was denied an opportunity to work overtime

<u>on four occasions</u>

Plaintiff alleges that he was denied overtime on four occasions while he was employed in the Maintenance Department: once in May 2007 (*Pl.'s Depo.* at 158:17–159:4) and three times in August 2007 (*Pl.'s Depo.* at 176:11–22). The Court shall address each instance in turn.

<u>May 2007</u>: Plaintiff stated during his deposition that he was discriminated against when Prouty was permitted to work overtime to cover the Sun God Festival in May 2007. (*Pl.'s Depo.* at 158:17–159:4.) Plaintiff, however, admitted during his deposition that Prouty was forced to work overtime to cover the Sun God Festival because Plaintiff refused to come in. (*Pl.'s Depo.* at 161:2–6.) Prouty, who originally intended to attend the festival as a volunteer, testified during his deposition that he was asked to work by Paul Terzino, the Director of the University Centers Department, when various problems arose, not Arcia, who was not even present at the festival and did not otherwise play any role in the assignment of overtime work. (*Prouty Depo.* at 72:6–15.) Plaintiff presents no evidence that this reason for Prouty's overtime work is simply pretext or that the decision was otherwise motivated by race.

<u>August 6, 2007</u>: On August 6, 2007, Arcia asked Da Rosa to come in and work overtime on his regularly scheduled day off in order to complete a painting project on a fountain. (*Arcia Decl.* at ¶ 11.) In his declaration, Arcia states that he chose to call Da Rosa because it was Da Rosa's day off and Plaintiff had already worked a full shift that day. Arcia explains that giving the hours to Plaintiff would have required Plaintiff to work a double shift from 5:30 a.m. to 10:30 p.m., and that it simply made more sense for Da Rosa to come in on his day off. (*Id.*) Arcia also states that Plaintiff did not ask if he could work overtime on the painting project. (*Id.*) The Court finds that based on this evidence, Defendant has met its burden of offering a legitimate, non-discriminatory reason for Arcia's decision. Despite this fact, Plaintiff offers no evidence that Defendant's reason is simply pretext or any other evidence to suggest that the decision was nonetheless the result of discriminatory animus.

<u>August 17, 2007</u>: On August 17, 2007, Prouty was permitted to work 1.5 hours of overtime to attend a contractor's meeting. (*Arcia Decl.* at ¶ 12.) In his declaration, Arcia stated that he permitted Prouty to work overtime to attend the meeting because Prouty had been previously tasked with building cabinets in the new maintenance shop, and the meeting was with the contractor on the project.

Arcia explains that he originally tasked Prouty with the project because of his extensive carpentry skills, a fact that Plaintiff does not dispute. (*Id.* at ¶¶ 6, 12–13; *Prouty Depo.* at 61:4–21, 62:3–11, 64:12–65:23; *Pl.'s Depo.* at 163:19–164:10.) The evidence also demonstrates that Plaintiff's skills were in plumbing and electrical, not carpentry. (*Pl.'s Depo.* at 163:19–164:10; *Arcia Decl.* at ¶ 5.) Based on this evidence, the Court finds that Defendant has offered a legitimate, non-discriminatory reason for Arcia's decision. Plaintiff offers no evidence that this reason is simply pretext or that the decision was otherwise motivated by race.

August 25, 2007: On August 25, 2008, Arcia allowed Prouty to come in on his day off and work 6.5 hours of overtime to install cabinets in the new maintenance shop. (*Arcia Decl.* at ¶ 13.) As already noted, Prouty had been previously tasked with building the cabinets. He had designed and run the project, and Arcia states that he had chosen Prouty for the project because of Prouty's carpentry skills. Again, Plaintiff fails to offer any evidence that this reason is simply pretext or that the decision was otherwise motivated by race.

Finally, the Court would be remiss if it failed to address the fact that Plaintiff admitted during his deposition that he had no idea why he was seldom assigned to work overtime. (*Pl.'s Depo.* at 44:18–25.) Such a statement is contrary to Plaintiff's assertion throughout this case that the assignment of overtime was discriminatory and exposes the fact that Plaintiff's assertion that Arcia's decisions were discriminatory is based on pure speculation.

For these reasons, the Court finds that Plaintiff has failed to rebut the legitimate, non-discriminatory reasons identified by the Defendant for Arcia's decisions in assigning overtime.

c.     Allegation that Plaintiff's non-Latino co-worker received weekends off when Plaintiff did not

Plaintiff alleges that he was discriminated against because Prouty received weekends off when Plaintiff did not. (*Compl.* at ¶ 18(11); *Pl.'s Depo.* at 34:12–41:25.) As already noted, Plaintiff was hired on a Sunday through Thursday schedule. Plaintiff has contended throughout the litigation that Prouty was permitted to "pick his schedule," while Plaintiff was not. (*Pl.'s Depo.* at 23:4–23:25.) Defendant does not dispute that Prouty was hired on a Monday through Friday schedule despite the fact that the position was advertised as a Tuesday through Saturday position. (*Arcia Decl.* at ¶ 6.) In

his declaration, Arcia explains that he had initially posted the position as a Monday through Friday position, but later changed it to a Tuesday through Saturday position. Prouty, however, had applied for the position while it was still a Monday through Friday position. When Prouty came in to interview and Arcia told him that the position had been changed to a Tuesday through Saturday position, Prouty told Arcia that he was no longer interested in the position because he did not want to work weekends. (*Id.*; *Prouty Decl.* at 15:14–16:25.) Arcia states that he ultimately hired Prouty, albeit on a Monday through Friday schedule, because of Prouty's extensive background in carpentry. (*Arcia Decl.* at ¶ 6.) There is no evidence that Plaintiff applied for this position or indicated his desire for this schedule prior to the job opening. In addition, Plaintiff admits during his deposition that no one promised him when he was hired that he would have a different work schedule. (*Pl.'s Depo.* at 50:19–51:23.) Plaintiff offers no evidence that Arcia's reason for deciding to hire Prouty on a Monday through Friday schedule is pretextual or that the decision was based on race.

On September 1, 2007, Plaintiff requested a shift change to a Monday through Friday schedule, but Arcia denied the request. (*Arcia Decl.* at ¶ 14.) Plaintiff asserts that this too was a discriminatory act. In his declaration, Arcia states that he told Plaintiff at the time that he had to deny the request because there was no open shift available, and permitting the change would "greatly disrupt customer service [because] your current schedule allows for plumbing and routine maintenance services to be performed during the hours of low occupant activity." (*Arcia Decl.* at ¶ 14; *Def.'s NOL* at Ex. 8.) The Court finds that this is a legitimate business reason for Arcia to deny Plaintiff's request. Plaintiff does not offer any evidence to suggest that such a position was available or that Arcia's stated reason for denying the request is pretextual. Without any evidence of pretext or other evidence that compels an inference of discrimination, Plaintiff fails to rebut Defendant's proffered legitimate, non-discriminatory reasons for why he was not given a Monday through Friday schedule despite his requests for one.

Finally, and most importantly, Plaintiff admits that Da Rosa, a non-Latino, was hired into the department as a Senior Building Maintenance Worker on a Tuesday-Saturday schedule. (*Pl.'s Depo* at 39:14–40:2.) Plaintiff testified during his deposition that he did not want Da Rosa's schedule, but preferred Prouty's schedule. (*Id.* at 41:1–13.) The fact that a similarly situated Caucasian worker also

had to work on the weekend negates any inference that Plaintiff's schedule was racially motivated. *See Snead*, *supra*, 237 F.3d at 1094.

d.    Other evidence of pretext

Perhaps the most glaring omission from this case is any evidence of discriminatory intent. There is no evidence of discriminatory animus in the form of racially charged statements or racial slurs.[9] Plaintiff points to a statement where Arcia allegedly stated that the Department should hire some of 'those 'Home Depot guys' to fix [a water] leak." (*Fernandez Decl.* at ¶ 8.) As an initial matter, the statement is inadmissible hearsay. However, even if the Court found the statement admissible, the Court does not find this comment, in and of itself, to be particularly probative on the issue of discriminatory intent.

At the hearing on Defendant's motion, Plaintiff's counsel repeatedly asserted that direct evidence is not required to carry his ultimate burden and that circumstantial evidence is sufficient. The Court agrees with Plaintiff. See *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) ("[the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]."). However, a plaintiff cannot simply rely on the circumstantial evidence offered to establish the prima facie case to rebut the defendant's proffered legitimate, non-discriminatory reasons. *See, e.g.*, *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991) ("[t]he Plaintiff cannot carry this burden simply by restating the prima facie case and expressing an intent to challenge the credibility of the employer's witnesses on cross-examination. [He] must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible."); *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("[The plaintiff] must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses."). Moreover, the Plaintiff must "present 'specific' and 'substantial' facts showing that there is a genuine issue for trial." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007) (internal citations omitted).

---

[9]The Court notes that Plaintiff frequently points to statements allegedly made by Arcia about gays and lesbians, as well as persons of other various racial backgrounds. Defendant objects to evidence of this nature on grounds that it is irrelevant. The Court agrees that such evidence is irrelevant under Federal Rule of Evidence 402, and **SUSTAINS** the objection.

Here, Plaintiff fails to offer any admissible evidence outside of that which he offered to establish his prima facie case.[10] At the hearing on Defendant's motion, Plaintiff's counsel pointed to instances where Plaintiff was asked to perform menial tasks, such as unclogging toilets and working on the roof during hot weather, while others who were similarly situated but of a different race were not, as circumstantial evidence of pretext and discriminatory motive. (*Hr'g Tr.* at 28:29:1.)

As to Plaintiff's claim that he was given the unappealing task of unclogging toilets, the record is replete with undisputed evidence that Plaintiff was the department's plumbing specialist. Moreover, Plaintiff could not identify any particular occasion when he was unfairly required to unclog a toilet, nor could he identify who else could have performed the task but was excused from doing so. (*Hr'g Tr.* at 28:4–29:1.)[11]

Plaintiff also offers the declaration of Bernard Thompson, who states that "[Arcia] would always tell his staff to leave those [toilets] for Greg Montoya even though his other staff could have accomplished the tasks and had nothing else to do." (*Thompson Decl.* at ¶ 14.) First, this statement is clearly comprised of hearsay, which renders the statement inadmissible. Moreover, Thompson states that he has been on disability leave since January 8, 2001, prior to Plaintiff's employment at UCSD. Thus, it appears that his statement also lacks foundation. Based on these facts, it is clear that Thompson's statements fail to meet evidentiary standards of admissibility. For this reason, the Court **SUSTAINS** Defendant's objection to the statement.

Finally, Plaintiff offers the declaration of Martin Fernandez, who states that in addition to Arcia leaving the toilets for Montoya, Arcia also required Montoya and other Hispanics to work on the roof during particularly hot and humid weather. (*Hr'g Tr.* at 29:1–7; *Fernandez Decl.* at ¶¶ 11, 12.) Like Thompson's statement, Fernandez's statement regarding the clogged toilets is also based on inadmissible hearsay. In terms of both statements, Fernandez also fails to describe any instance to support his conclusory statements, nor does he identify sufficient facts for the Court to find an

---

[10]This fact becomes obvious simply by looking at Plaintiff's separate statement of undisputed facts. Plaintiff merely copies the citations from the prima facie portion of his statement of "undisputed facts" into the pretext portion of his statement. The Court notes that Plaintiff adds a few citations to the deposition of Danny Mesa in the pretext section of his separate statement, however, the Court sustains the objections to these citations for the reasons identified by Defendant in its objections.

[11]The Court notes that Plaintiff makes no reference to any rooftop work assignments in his declaration or deposition.

inference that Arcia was acting in a discriminatory manner in distributing the various work assignments. Because Fernandez's statements are comprised of inadmissible hearsay, lack foundation, and appear to be nothing more than unsupported conclusions, the Court **SUSTAINS** Defendant's objection and finds the evidence inadmissible. Accordingly, the Court finds these two instances incapable of serving as circumstantial evidence of discriminatory motive.

In addition to Plaintiff's failure to present any admissible evidence demonstrating pretext or discriminatory motive, there are several pieces of evidence that give rise to a strong inference that there was no discrimination at play when Arcia made the various decisions now at issue. First, Arcia is himself Hispanic. While Plaintiff attempts to rebut this fact by offering statements that Arcia thought of himself as better than other Hispanics, the statements are conclusory and lack foundation. In addition, Arcia was responsible for rehiring Plaintiff when Plaintiff wanted to come back to the Maintenance Department after he left the department to go to SDSU. (*Pl.'s Depo.* at 50:10–54:16.) Plaintiff's transition back into the Maintenance Department required Plaintiff to take a significant pay cut. (*Id.*) "Where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996). Even now, Plaintiff admits that he has attempted to transfer back into the Maintenance Department where he would again be subject to Arcia's supervision. (*Pl.'s Depo.* at 75:5–7.)[12] This is not the sort of evidence that compels an inference of discriminatory motive.

The Court notes that Plaintiff repeatedly asserts that he felt the decisions were motivated by discriminatory animus; however, "subjective personal judgments do not raise a genuine issue of material fact." *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). *See also Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (finding the plaintiff's assertions that his employer had discriminatory motive and intent in the adverse action were inadequate without substantial factual evidence to raise an issue precluding summary judgment). Plaintiff fails to offer any evidence that discrimination played a role in the various decisions he now complains about, and

---

[12]Of note, after Plaintiff transferred into the Facilities Management Department as a Maintenance Mechanic, Prouty transferred into the same department, also as a Maintenance Mechanic. (*Prouty Depo.* at 26:15–24.)

1   his opinion that it did is clearly based on speculation.

2          Finally, at the hearing on Defendant's motion, the Court repeatedly asked Plaintiff's counsel

3   to direct the Court's attention to the evidence that supported Plaintiff's argument that Arcia's

4   decisions were the result of discriminatory animus. Other than identifying the few pieces of evidence

5   discussed above, Plaintiff offered no other evidence to support his claim. When the Court expressed

6   its difficulty with Plaintiff's position, Plaintiff's counsel repeatedly implied that the Court's difficulty

7   was the result of the Court determining the credibility of Plaintiff's witnesses. (*Hr'g Tr.* at

8   40:23–41:16.) The Court, however, has not made a single credibility determination in concluding that

9   Plaintiff has not met his burden. "A trial court can only consider admissible evidence in ruling on a

10  motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)

11  (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.

12  1988)). As already noted, all of the evidence Plaintiff relies on is inadmissible, and Plaintiff has failed

13  to demonstrate how Defendant's objections could be cured at trial.

14         On balance, the only potentially admissible evidence Plaintiff has offered to rebut Defendant's

15  proffered legitimate, nondiscriminatory reason is Arcia's alleged "Home Depot guys" statement. This

16  evidence is insufficient to create a triable issue of fact that Arcia's actions toward Plaintiff were

17  racially motivated or that the legitimate, nondiscriminatory reasons proffered by Defendant are

18  otherwise pretext.

19          It is the plaintiff's ultimate burden of persuading the court that he has been the victim of

20  intentional discrimination, and he must do so by presenting "'specific' and 'substantial' facts showing

21  that there is a genuine issue for trial." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007)

22  (internal citations omitted). Plaintiff has failed to meet this burden, leaving the Court with no choice

23  but to grant Defendant's motion for summary judgment.

24  ///

25  ///

26  ///

27  ///

28  ///

**Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment in its entirety. (Doc. No. 16.) This order disposes of all claims. Accordingly, the Court **ORDERS** the Clerk of Court to enter judgment in favor of Defendant Regents of the University of California and to terminate the case.

**IT IS SO ORDERED**.

DATED:  July 9, 2010

Hon. Michael M. Anello
United States District Judge

- 25 -